IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RONNIE MYATT                                                                                         PLAINTIFF

v.                              NO. 3:18-cv-00004 PSH

NANCY A. BERRYHILL, Acting Commissioner                                                              DEFENDANT
of the Social Security Administration


MEMORANDUM OPINION AND ORDER

INTRODUCTION. Plaintiff Ronnie Myatt ("Myatt") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon the findings of an Administrative Law Judge ("ALJ") made after this case was remanded for additional proceedings.

MYATT'S CLAIMS. Myatt first maintains that the ALJ erred when he failed to follow the directives in the order remanding this case for additional proceedings. Myatt also maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] It is Myatt's contention that his residual functional capacity was erroneously assessed because insufficient weight was given to the opinions of his treating physician.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

EVIDENCE OF RECORD. Myatt was born on July 29, 1966, and was forty-nine years old on the day the ALJ denied Myatt's application for disability insurance benefits on remand. Myatt alleged that he became disabled beginning on October 11, 2011, as a result of, inter alia, diabetes mellitus type 2 ("diabetes"), chronic obstructive pulmonary disease ("COPD"), and emphysema.

Myatt ably summarized the evidence in the record, and the Commissioner did not challenge the summary. It will not be reproduced in full, except to briefly note several matters germane to the issues raised in the parties' briefs.

The record reflects that Myatt was seen by Dr. Ronald Hollis, M.D., ("Hollis") on multiple occasions between September of 2011 and January of 2016. See Transcript at 274 (09/30/2011); 273 (10/27/2011); 272 (12/22/2011); 271 (12/29/2011); 270 (01/27/2012); 269 (02/22/2012); 392, 396 (04/20/2012); 395 (06/19/2012); 452 (08/16/2012); 451, 458 (09/13/2012); 456 (10/12/2012); 455 (12/11/2012); 454 (02/08/2013); 461 (04/08/2013); 714 (06/06/2013); 713 (09/04/2013); 712 (11/02/2013); 711 (12/30/2013); 710 (03/27/2014); 709 (05/27/2014); 708 (07/25/2014); 707 (09/30/2014); 706 11/03/2014); 705 (12/30/2014); 747 (01/20/2016). Myatt was repeatedly diagnosed with, inter alia, hypertension, COPD, foot pain, diabetes, and degenerative joint disease of the lumbar spine/lumbar degenerative joint disease with a herniated disc. With respect to Myatt's back pain, Hollis' progress notes reflect that Myatt obtained some benefit from medication but reported increased pain when he failed to take the medication as prescribed. He continually exhibited a decreased range of motion and occasional positive straight leg raises throughout the period.

On February 22, 2012, Hollis signed a residual functional capacity questionnaire on Myatt's behalf. See Transcript at 279-280. In the questionnaire, Hollis represented that Myatt's impairments include hypertension, diabetes, and COPD. Hollis identified Myatt's symptoms as shortness of breath, fatigue, weakness, pain, and anxiety. Hollis opined that Myatt can only stand/walk for ten minutes at any one time and for a total of only two hours in an eight hour workday. Hollis opined that Myatt can only sit for thirty minutes at any one time and for a total of only five hours in an eight hour workday. Hollis opined that Myatt would need to recline or lie down during an eight hour workday in excess of the typical workday breaks. Hollis also opined that Myatt would need a job that permitted shifting positions. It was Hollis' opinion that Myatt would need to miss work more than four times a month. Hollis completed the questionnaire by representing that Myatt is incapable of working an eight hour day, five days a week on a sustained basis.

On June 6, 2013, Hollis signed a medical source statement-physical on Myatt's behalf. See Transcript at 463-464. In the statement, Hollis identified Myatt's symptoms as chronic pain, shortness of breath, weakness, and fatigue. Hollis opined that Myatt can only lift and/or carry less than ten pounds at any one time, can only stand and/or walk for thirty minutes at any one time, and can only stand and/or walk for a total of one hour in an eight hour workday. Hollis opined that Myatt can only sit for thirty minutes at any one time and only sit for a total of three hours in an eight hour workday. Hollis additionally opined that Myatt has a limited ability to push and/or pull because of pain and shortness of breath; can never climb; and can only occasionally balance, stoop, kneel, crouch, or bend.

On January 20, 2016, Hollis signed a second medical source statement-physical on Myatt's behalf. See Transcript at 739-740. In the statement, Hollis identified Myatt's impairments to be hypertension, COPD, and degenerative joint disease of the lumbar spine. Hollis opined that Myatt can only lift and/or carry less than ten pounds at any one time, stand and/or walk for a total of less than two hours in an eight hour workday, and sit for a total of about four hours in an eight hour workday. Hollis opined that Myatt requires frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking. Hollis additionally opined that Myatt's ability to reach, finger, and handle is limited. It was Hollis' opinion that Myatt would need to miss work more than three days a month.

During the period between September of 2011 and January of 2016, Myatt underwent medical testing. For instance, a chest x-ray was performed on December 22, 2011, and the results revealed obstructive pulmonary disease with "[p]robable calcified granuloma left upper lung." See Transcript at 275. The results of a second chest x-ray performed on August 22, 2012, were similar. See Transcript at 407. A CT scan of Myatt's lumbar spine was performed on October 1, 2012, and the results revealed the following: "[d]iscogenic and nondiscogenic degenerative changes of the lower lumbar spine at L4/L5 and L5/S1 levels" and "[c]entral disc herniation and degenerative changes at L5/S1 with no spinal stenosis or nerve root displacement." See Transcript at 457. The results of an MRI of Myatt's lumbar spine performed on October 21, 2014, were similar. See Transcript at 692. A second MRI of his lumbar spine was performed on January 26, 2016, and the results again revealed degenerative changes in his lumbar spine as well as a "central disc protrusion at L5/S1." See Transcript at 742.

During the period between September of 2011 and January of 2016, Myatt received approximately nineteen chiropractic treatments from Stephen Duncan, D.C., ("Duncan") for neck and low back pain. See Transcript at 683-689, 701-703. Myatt repeatedly complained of pain in his neck and back, and Duncan noted that Myatt's medication included Vicodin.

During the period between September of 2011 and January of 2016, Myatt was incarcerated in the Arkansas Department of Correction ("ADC") for approximately eight months. See Transcript at 511. His health classification within the ADC was M2, or average to good physical condition. See Transcript at 721. He was restricted from job assignments requiring the following: 1) prolonged crawling, stooping, running, jumping, walking, or standing in excess of four hours a day; 2) strenuous physical activity in excess of four hours a day; and 3) lifting heavy materials in excess of twenty pounds. He was allowed a ten minute break after each hour of work.

On February 22, 2016, Myatt was seen by Dr. Edison McDaniels, M.D., ("McDaniels"), a neurosurgeon. See Transcript at 762-764. Myatt reported several years of increasing lower back pain without radiation into his lower extremities. He reported that his pain was constant but varied in intensity. Myatt additionally reported that he was taking hydrocodone daily. McDaniels observed that Myatt was a "heavy smoker" with significant COPD. See Transcript at 762. McDaniels performed a physical examination of Myatt, and the results revealed negative straight leg raises, 5/5 lower extremity strength, and a gait that was "not antalgic." See Transcript at 764. McDaniels diagnosed chronic low back pain and degenerative disc disease of the lumbar spine. McDaniels recommended that Myatt see a pain clinic and suggested he stop smoking.

In April of 2012, Dr. Ronald Crow, D.O., ("Crow") reviewed Myatt's medical records at the request of the state agency and completed an assessment of his residual functional capacity. See Transcript at 363-371. Crow rejected the findings and conclusions made by Hollis in his February 22, 2012, residual functional capacity questionnaire, noting that Hollis' diagnoses "hardly rise to the level of preventing [Myatt] from working." See Transcript at 369. Crow opined that the medical evidence of record "comes close to supporting non-severe," but he gave Myatt the "benefit of the doubt" and assigned him a medium residual functional capacity. See Transcript at 369.

In June of 2012, Dr. Bill Payne, M.D., ("Payne") reviewed Myatt's medical records at the request of the state agency and completed an assessment of his residual functional capacity. See Transcript at 399-406. Payne also rejected the findings and conclusions made by Hollis in his February 22, 2012, residual functional capacity questionnaire and assigned Myatt a medium residual functional capacity.

A series of documents were completed by Myatt or a state agency representative in connection with Myatt's application. See Transcript at 168-178, 182-202, 204-218. In the documents, it was represented that Myatt can attend to his own personal care, prepare simple meals, perform simple household and yard work albeit for only short periods of time, and be outside. Myatt represented that his impairments impact his ability to, inter alia, stand, walk, bend, kneel, squat, sit, and lift. He can lift approximately twenty pounds, but his back and ankles hurt when he does so. He appeared to represent that he can walk for about thirty minutes at one time before he must stop and rest.

The record contains a summary of Myatt's work history. See Transcript at 634-642. The summary of his FICA earnings reflects that he had earnings between 1988 and 1996, no earnings between 1998 and 2002, and good earnings between 2004 and 2011. See Transcript at 642.

THE FIRST ADMINISTRATIVE HEARING. Myatt testified during the first administrative hearing. See Transcript at 54-72. He was forty-seven years old and had dropped out of school in the tenth grade. He did not work between 1998 and 2002 because he was involved in illegal drugs and alcohol and eventually served time in prison. He has two children, neither of whom reside with him, and he is behind on his child support. He had stopped smoking but began using electronic cigarettes. He was asked why he cannot work, and he testified as follows: "It's my back and my ankles; and certain days of the week, I just feel really sick at my stomach. I have little ulcers on the bottom of my feet from the diabetes. It's really hard to walk. I have trouble breathing. Some days are better than others." See Transcript at 63. Myatt has difficulty standing for any length of time and can only sit for about forty-five minutes before his back begins to hurt. He cannot lift more than about twenty pounds at one time.

THE ALJ'S FIRST ADVERSE DECISION. The ALJ assessed Myatt's residual functional capacity and found that he is capable of performing light work, although he should avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and extreme heat and cold. In so finding, the ALJ gave no weight to Hollis' opinions contained in his February 22, 2012, residual functional capacity questionnaire and his June 6, 2013, medical source statement. The ALJ found at step five that there are other jobs Myatt can perform and denied his application.

THE REMAND ORDER. Myatt challenged the ALJ's first adverse decision by filing a complaint pursuant to 42 U.S.C. 405(g). The Court reviewed the record and found that the ALJ could find as he did with regard to Hollis' opinions as they are inconsistent with the progress notes Hollis compiled during the course of treating Myatt over an approximately nineteen month period. The Court nevertheless determined that a remand was necessary because the assessment of Myatt's residual functional capacity was not supported by some medical evidence. The Court so found for two reasons. First, the ALJ erred by giving great weight to Crow and Payne's opinions. Crow and Payne are consultants who never examined Myatt; they simply summarized his medical records and offered brief assessments of his residual functional capacity. Second, it appeared that the ALJ impermissibly drew his own inferences about the severity of Myatt's impairments from the progress notes in the record. The Court could not tell what the ALJ relied upon to cause him to find that Myatt is capable of performing a reduced range of light work. The ALJ was directed to re-evaluate the medical evidence and, if necessary, send Myatt for a consultative examination.

THE SECOND ADMINISTRATIVE HEARING. Myatt testified during the second administrative hearing. See Transcript at 507-526. He went back to prison sometime in 2015 after having been found in possession of methamphetamine. He can lift and carry up to twenty-five pounds. If allowed to alternate between standing and sitting, he can stand for about one hour at a time. He can walk about a city block before requiring rest and can sit for about ninety minutes before he experiences pain. His ability to reach is also limited. He spends most of his days at his daughter's home watching his grandchildren.

THE ALJ'S SECOND ADVERSE DECISION. The ALJ found at step two that Myatt has severe impairments in the form of degenerative disc disease of the lumbar spine, diabetes, asthma, and hypertension. The ALJ assessed Myatt's residual functional capacity and found it to be as follows:

> [Myatt] retains the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk four hours in intervals of 30 to 60 minutes followed by 10 minutes of sitting in an eight-hour workday; sit six hours in an eight-hour workday; push and/or pull 20 pounds occasionally and 10 pounds frequently. [He] can occasionally stoop, kneel, crouch, crawl, and climb one flight of stairs without stopping. Because of his asthma, [he] should avoid exposure to excessive airborne irritants, such as dust, smoke, or fumes, and avoid exposure to heat or cold.

See Transcript at 485. In so finding, the ALJ assigned some weight to Crow and Payne's opinions. The ALJ assigned "little weight," though, to Hollis' opinions because they are "inconsistent with his own treating records and the evidence of record as a whole." See Transcript at 489. The ALJ found at step four that Myatt cannot perform his past relevant work but found at step five there are other jobs he can perform.

MYATT'S FIRST ASSERTION OF ERROR. Myatt first maintains that the ALJ erred when he failed to follow the directives in the order remanding this case for additional proceedings. Myatt appears to so maintain for three reasons. First, although the ALJ only assigned some weight to Crow and Payne's opinions, the ALJ still relied upon their opinions for reasons disapproved by the Court. Second, the ALJ erroneously characterized Crow and Payne's opinions as "administrative findings of fact made by state agency non-examining expert sources." See Transcript at 490. Last, the ALJ failed to send Myatt for a consultative examination.

The Court has reviewed the record in this case, giving particular attention to the ALJ's second adverse decision. The ALJ did not deviate from the remand order to such an extent that another remand is warranted. The Court so finds for three reasons.

First, the ALJ did not err by assigning some weight to Crow and Payne's opinions. Although the opinions of non-treating, non-examining physicians like Crow and Payne do not normally constitute substantial evidence on the record as a whole, see Vossen v. Astrue, 612 F.3d 1011 (8th Cir. 2010), their opinions are entitled to some consideration. Had the ALJ in this instance relied solely upon their opinions in assessing Myatt's residual functional capacity, the Court would agree that the ALJ erred. The record reflects, though, that their opinions were but one of the factors the ALJ relied upon in assessing Myatt's residual functional capacity. Moreover, the ALJ could and did find that their opinions have support in the record, although the ALJ could and did discount their opinions that Myatt is capable of medium work. The ALJ instead found that Myatt is limited to performing a reduced range of light work.

Myatt faults the ALJ for finding that Crow and Payne "thoroughly" evaluated the medical evidence in forming their opinions. It is impossible to know from reading Crow and Payne's assessments whether they indeed "thoroughly" evaluated the medical evidence in forming their opinions. The reader is limited to the four corners of the assessments and the medical evidence recited in the assessments. Having reviewed the assessments, the Court is satisfied that Crow and Payne recited the medical evidence in the record; Myatt has certainly not cited the Court to any medical evidence they ignored or failed to note. The Court is satisfied that they adequately considered the medical evidence, and the ALJ could find as he did with respect to their opinions.

10

Second, the ALJ did not err when he characterized Crow and Payne's opinions as "administrative findings of fact made by state agency non-examining expert sources." See Transcript at 490. Although their opinions are not findings of fact as that phrase is generally understood, the ALJ's characterization of the opinions as such comports with the governing regulations. See Docket Entry 13 at CM/ECF 5-6 (evidence from state agency medical consultant considered prior administrative medical findings). In any event, there is nothing to suggest that the ALJ gave improper weight to Crow and Payne's opinions or otherwise accorded them too much deference.

Last, the ALJ did not err when he failed to send Myatt for a consultative examination. Although a consultative examination would have been helpful in properly assessing Myatt's residual functional capacity, the ALJ was not required to send Myatt for such an examination. The only thing the ALJ was required to do upon remand was re-assess Myatt's residual functional capacity and, as a part of doing so, re-evaluate the medical evidence. The Court is satisfied that the ALJ did so.

MYATT'S SECOND ASSERTION OF ERROR. Myatt additionally maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. It is Myatt's contention that his residual functional capacity was erroneously assessed because insufficient weight was given to Hollis' opinions.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). It is made using all of the relevant evidence in the record and must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of the assessment, the ALJ must consider the

11

medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A treating physician's opinions are given controlling weight "if, and only if, [they are] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." See Winn v. Commissioner, 2018 WL 3322247, 3 (8th Cir. July 6, 2018) [internal quotations omitted].

The reasons the ALJ gave for assigning little weight to Hollis' opinions are supported by substantial evidence on the record as a whole. The Court so finds for the following reasons.

First, the ALJ could and did find that Hollis' opinions are inconsistent with his own treating records. On February 22, 2012, Hollis signed a residual functional capacity questionnaire on Myatt's behalf. See Transcript at 279-280. In the questionnaire, Hollis opined, inter alia, that Myatt can only stand/walk for ten minutes at any one time and for a total of two hours in an eight hour workday and can only sit for thirty minutes at any one time and for a total of five hours in an eight hour workday. Hollis opined that Myatt would need to recline or lie down in excess of the typical workday breaks. Hollis examined Myatt on February 22, 2012, though, see Transcript at 269, and Hollis' findings and observations from that day were fairly routine. Hollis noted that Myatt's blood pressure and blood sugars were good. Although it is true that Myatt reported shortness of breath, cough, and congestion, there is nothing to suggest that his physical limitations were as severe as Hollis opined or that they impacted his work-related abilities to the extent Hollis opined. As the ALJ noted, a "review of systems in the treating notes show no positive musculoskeletal issues" to support Hollis' opinions that Myatt's ability to stand/walk and sit were severely limited. See Transcript at 490.

Second, the ALJ could and did find that Hollis' opinions are inconsistent with "the evidence of record as a whole." See Transcript at 489. On June 6, 2013, Hollis signed a medical source statement-physical on Myatt's behalf. See Transcript at 463-464. In the statement, Hollis opined, inter alia, that Myatt can lift and/or carry less than ten pounds at any one time, can only stand and/or walk for thirty minutes at any one time, and can only stand and/or walk for a total of only one hour in an eight hour workday. Hollis also opined that Myatt can only sit for thirty minutes at any one time and can only sit for a total of three hours in an eight hour workday. On January 20, 2016, Hollis signed a second medical source statement-physical on Myatt's behalf. See Transcript at 739-740. In the statement, Hollis opined, inter alia, that Myatt can lift and/or carry less than ten pounds at any one time, can only stand and/or walk for a total of less than two hours in an eight hour workday, and can only sit for a total of about four hours in an eight hour workday. There is evidence to the contrary in the record, and although the Court might have weighed the evidence differently, the ALJ could and did rely upon the contrary evidence and discount Hollis' opinions.

For instance, as the ALJ noted, Hollis' opinions are inconsistent with the medical records compiled by the ADC. The record reflects that Myatt was incarcerated within the ADC sometime in 2015 for approximately eight months. His medical classification was M2, or average to good physical condition. He was only restricted from job assignments requiring prolonged crawling, stooping, running, jumping, walking, or standing in excess of four hours a day; strenuous physical activity in excess of four hours a day; and lifting heavy materials in excess of twenty pounds. He was allowed a ten minute break after each hour of work.

As the ALJ also noted, Hollis' opinions are inconsistent with McDaniels' findings and observations. When Myatt saw McDaniels on February 22, 2016, or approximately one month after Hollis signed the second medical source statement-physical, Myatt reported several years of increasing lower back pain without radiation into his lower extremities. He reported that he was taking hydrocodone daily. McDaniels observed, though, that Myatt was a "heavy smoker" with significant COPD. See Transcript at 762. McDaniels examined Myatt and observed that he had negative straight leg raises, 5/5 lower extremity strength, and a gait that was "not antalgic." See Transcript at 764.

Hollis' opinions are inconsistent with the opinions of Crow and Payne, both of whom rejected the opinions offered by Hollis in his February 22, 2012, residual functional capacity questionnaire. Crow, in fact, observed that Hollis' diagnoses "hardly rise to the level of preventing [Myatt] from working" and noted that the medical evidence of record "comes close to supporting non-severe." See Transcript at 369.

Hollis' opinions are also inconsistent with portions of Myatt's own testimony during the second administrative hearing. In the hearing, Myatt testified that he can lift and carry up to twenty-five pounds. See Transcript at 513.

The medical testing is capable of more than one acceptable characterization, and the ALJ could characterize it in such a way as to support the assessment he made of Myatt's residual functional capacity. The testing revealed that Myatt has degenerative changes and disc protrusions in the lumbar portion of his spine. The ALJ recognized that the impairments cause pain and limited Myatt's ability to walk, stand, and sit. The ALJ accounted for the limitations and restricted Myatt to performing a reduced range of light work.

The question at bar is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, "[a] reviewing court may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision." See Id. [internal quotations and citations omitted]. Here, the evidence is capable of more than one acceptable characterization, and the ALJ could find as he did with respect to Myatt's residual functional capacity.

CONCLUSION. On the basis of the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Myatt's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 17th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE